# COURT OF SPECIAL SESSIONS—PART VI—NEW YORK CITY,

## Dec. 31, 1915.

## THE PEOPLE v. DANIEL J. HOYT.

(1.) PUBLIC HEALTH LAW, SEC. 246—NARCOTICS—LAWS 1915, CH. 327, SEC. 246—HEROIN.

Defendant, a duly licensed physician, had been treating D. for three months for drug addiction and examined him July 19, 1915, and on July 20 delivered heroin to his wife as a part of his treatment for her husband and entered the husband's name in his book instead of the wife's. Held that the physician is not required to make a physical examination each time the drug is delivered.

(2.) DELIVERY TO MESSENGER OF DRUG.

A bona fide delivery of heroin to the wife by a physician who had examined the husband the day before—is not a violation of the statute.

(3.) SAME—ENTRY IN PHYSICIAN'S RECORD.

The recording of the name of the patient by the physician, who has made an examination within a reasonable time, is a substantial compliance with the law although he delivered the drug to an agent or a messenger from his patient.

PRESENT:—ISAAC FRANKLIN RUSSELL, P. J., HENRY W. HERBERT, and JOHN J. FRESCHI, JJ.

APPEARANCES:—PETER P. SMITH, JOHN J. A. O'REILLY, of Counsel.

*Charles A. Perkins, District Attorney.*

*Floyd H. Wilmot, Deputy Assistant District Attorney, Don Carlos Buell*, of Counsel.

FRESCHI, J.:

The defendant has been tried upon two informations, one charging that he, " being a duly licensed physician, unlawfully sold and delivered to Elizabeth Day a quantity of heroin without first making a physical examination of her for the treatment of injury, disease or deformity." This information was drawn under that portion of section 246 of the Public Health Law, as amended by Chap. 327, Laws 1915, which states that " it shall be unlawful * * * for any duly licensed physician to dispense, give or deliver any of the said drugs * * * except after a physical examination of any person for the treatment of disease, injury or deformity."

The second information charges that the defendant unlawfully failed to keep on record the name of said Elizabeth Day to whom he then, dispensed, gave and delivered such drug in violation of section 248 of the said Public Health Law. A violation of any of these sections is made a misdemeanor punishable as such.

Both cases were tried together under stipulation.

The evidence produced by the People upon the trial was that the defendant on July 20th, 1915, while the husband of said Elizabeth Day was in custody of the police, she went to the office of the defendant, who is a licensed physician; that he gave her a package containing heroin; that upon leaving the premises she was apprehended by a police officer and taken back into the defendant's office; that the defendant admitted that he had supplied the woman with this drug, delivered to her on behalf of her husband, without a physical examination of said Mrs. Day, claiming that the same was for her husband, who had been under defendant's treatment for the drug habit.

An examination made at the time by the police of the records of the defendant showed an entry of the quantity of the drug given Mrs. Day; but instead of her name being recorded, that of her husband was noted in the book.

The defendant, in his own behalf, testified that he was a duly

licensed physician; that he had been treating the husband of the
Day woman for about three months for a disease known as
drug addiction; that he had made an examination of Mr. Day
approximately three months prior to his (defendant's) arrest;
that he had seen Edward Day on July 19th, 1915, the day
previous to his arrest, and examined him then, gave him a drug,
and that the medicine in question was delivered on July 20th,
the following day to his wife, as a part of his treatment for her
husband.

This case is the first prosecution, I believe, under this section
of the Public Health Law, and may be treated as a test case.
And, inasmuch as it may be treated and regarded as a precedent,
it might be well to have an expression of opinion on the law
governing under these facts.   The record presents, it seems to
me, these points: (1)   Is a physician required to make a physical
examination of the same patient to whom he delivers the drug
on each occasion before such delivery; (2)   Can such delivery
be lawfully made to the agent or representative of the patient
within a reasonable time after the examination; and, if so, (3)
is an entry in the doctor's record of the patient's name instead
of that of the agent, a compliance with the requirements of the
law?   Of course, the question of fact and the bona fides of the
defendant in making the diagnosis and the delivery are always
in question in a case of this character.

Does the delivery of the heroin in question, and making
the record thereof in the manner above indicated constitute
these acts a misdemeanor within the purview of the statute now
under consideration?

The People contend that the intention of the Legislature was
that the drugs, heroin included, enumerated in section 245 of
the Public Health Law should not be supplied to any person to
whom the same should be supplied through any messenger, and
only after a physical examination of the person to whom the
same should be supplied as required by section 246 thereof.

And in this connection, the District Attorney argues that in cases where liquor dealers have attempted to defend themselves for delivering liquor to minors on the theory that the child was its parents' messenger, the courts have held that this is no defense, as they also have, in the sale of tobacco to children where the defense offered was that the same was delivered to them as messengers for their parents or some adult person. (See sec. 484, Penal Law). This statute is not applicable to the case at bar, nor are the cases decided thereunder. This latter statute was enacted as Chap. 41, Laws 1906, after the decision of the Court of Appeals in People v. Zabor, 183 N. Y. 242. The Court held in that case that a conviction under the section of the Penal Code, which made it a misdemeanor for a person to furnish tobacco in any form to any child actually or apparently under the age of sixteen years, was not warranted where the evidence discloses that the boy to whom the defendant sold a package of cigars was sent to the store and furnished with money by his mother for the purpose of procuring cigars for a person who boarded with her; that he told the defendant whom they were for, and that the defendant knew the fact, the boy having been sent on a similar errand many times before, since in the circumstances the cigars were sold, not to the boy, but to the person for whom he was directed to procure them, the boy acting merely as his agent. The burden of proving the agency in all such cases, I think, is properly with the defendant. (People v. McGuire, 113 App. Div. 631). Section 484 (Penal Law), permitting children to attend certain resorts, makes the acts therein inhibited a misdemeanor, and then provides: " It shall be no defense to a prosecution for a violation of subdivisions three, four, five or six of this section, that in the transaction upon which the prosecution is based the child acted as the agent or representative of another, or that the defendant dealt with such child as the agent or representative of another."

The Public Health Law (*supra*) contains no provision what-

soever of this sort limiting the defense of agency or rendering it nugatory. Had the Legislature seen fit to do so, is it not reasonable to say that the law would have, in some way, indicated that it shall not be a defense to any prosecution for a delivery of heroin to the person or representative of the patient? The absence of any such provision is a significant and potent circumstance indicative that the Legislature did not seek to make it a crime for anyone to deliver heroin to a representative of his patient as was done by Dr. Hoyt. The intendment of the Legislature is the pivotal point of the case. It is perfectly clear that the legislative intent is to prevent physicians from delivering any of said drugs to any person before a physical examination; but, in establishing this as a condition precedent, I cannot hold that physicians, in dealing with the problem of narcotic drug addiction and the treatment of it as a medical disease, which, as appears from the testimony in this case, is somewhat unsettled as a medical proposition, must make a physical examination of his patient each time that the drug is delivered.

I recognize that a great deal of crime is being committed in connection with the illicit traffic in habit forming narcotic drugs, and that the drug addict is at the mercy of the illicit trafficker (whether professional or otherwise), who is willing to exploit the unfortunate victim. The law cannot deal too severely with the criminal who commercializes and exploits the physical necessity in such cases; and it is wise that we have stringent laws and a swift and a strict enforcement of them to deal with the individual who supplies the drug through channels of illicit drug commerce. But I doubt that the Legislature intended to require that a physical examination shall be made as many times a day as the drug is administered by a doctor, or as often as it shall be necessary to prescribe it, to properly treat a given case over a stated period. The expert proof, in this case, shows that a diagnosis can be made and suitable treatment given covering a considerable length of time with only one ex-

amination of the patient. The defendant made a physical examination of Mr. Day that enabled him to determine the amount of drug he required in his treatment from day to day, and thereafter and within a reasonable time, he delivered or caused to be delivered the medicine for such treatment. In this, he has met the requirements of the statute.

As to the legitimate manner of delivery of the drug, whether made personally to the patient, or to his messenger, we must look to the statute, as a whole, to enable a determination of this phase of the case. It must be remembered that the law permits the examining physician, to issue to the drug addict a prescription to procure the amount of such of these drugs as the treatment of his case demands, which may be purchased from a druggist. There can be no question that the person for whom the drugs are intended can send his messenger with the prescription to have the druggist fill it and dispense the medicine called for. If this is lawful, why, then, cannot the physician, who has the right to prescribe the medicine, give the drug himself to the same messenger for the patient? I find here a bona fide delivery of heroin to the wife of the Mr. Day, one of the defendant's patients, for his use while under defendant's professional care and treatment. If the Court were to believe that delivery was to Mrs. Day for her own use, or the use of someone else other than that of her husband, the case of the People would be made out. The evil aimed at and sought to be cured and prevented, if possible, is the sale of the proscribed drug to persons who are not under some form of medical control and supervision; and the Court should not extend the statute to cases unless they come clearly and plainly within the intendment and purpose of the lawmakers. Many instances can be cited where a physician might examine a patient and later deliver through another the drug suitable to the treatment of the case. It is purely a question of credibility. I can, however, conceive of a defense like this being urged as a subterfuge to escape the consequences of

an infraction of the law, but each case must stand on its own bottom.

It is not fair or just to suppose that the object of the law is to embarrass the medical profession or to effect a procedure whereby persons are compelled to resort to those who commercialize the drug in an illicit traffic of it.

It is elementary that that interpretation must be given to the act which will best effectuate the intent of the Legislature, and that, is to be reached by taking the words of the statute and giving to them their plain, natural and ordinary meaning and signification. Personal delivery of a drug under these circumstances is not a violation within the purview of the statute. This is clear from a reading of another section of the Act in question which requires a record to be kept if delivery be made " in any other manner." See sec. 248, Public Health Law. So much as applies to this case reads: " All persons authorized by law to sell, administer, prescribe, dispense or dispose of any of the drugs enumerated in section two hundred and forty-five of this chapter, shall forthwith keep on record the name and address of each person to whom such drug is dispensed, given or *in any manner delivered* * * *. Any violation of this section is hereby declared to be a misdemeanor." The Act taken as a whole points unmistakably, in my judgment, to the construction as reasonable, and as manifesting that the Legislative intent was, that such drugs might properly be delivered by a physician, who has made the required examination, to his patient directly or through his agent, and that the recording of the name of the patient is a substantial compliance with this law, although I deem it advisable in such a case for a physician to record, as well, the name and address of the agent.

For the reasons assigned, I vote for an acquittal.

HERBERT, J. Votes for Acquittal.

RUSSELL, C. J.   I am of the opinion that, on the facts of this case, the defense urged is a mere subterfuge and I accordingly vote for a conviction.

**Defendant Acquitted.**