In the Matter of the VILLAGE OF DRESDEN, YATES COUNTY, et al., Petitioners, against COUNTY OF YATES et al., Respondents.

Supreme Court, Equity Term, Yates County, December 31, 1948.

*Paul Reed Taylor* for petitioners.

*Homer C. Pelton* for respondents.

VAN DUSER, J. This proceeding is brought by the Village of Dresden, located in the town of Torrey, county of Yates, and William Keefer and Carl Eskildsen, two of its citizens, as petitioners, to compel the County of Yates to rebuild and reconstruct a bridge, which was approximately 110 feet long, and which was located entirely within the corporate limits of the village of Dresden.

The bridge formed a part of Milo Street in the village, running in a general northerly and southerly direction, and across Keuka Lake outlet. On the southerly side of the water, there is located a large power plant owned by the New York State Electric and Gas Corporation, and also a large plant of the duPont deNemours Corporation, in both of which plants residents of the village of Dresden are employed. The street and highway were used, prior to the discontinuance and destruction of the bridge, as a means of travel within, into, and out of the village, to and from its school, and for general highway purposes. The highway and bridge had been in existence for many, many years, and prior to the memory of any witnesses sworn.

It was stipulated during the trial that the court, either during the trial, or after, at his convenience, might visit the places referred to during the trial, and the court did, at the conclusion of the trial, accompanied by both counsel, make a visit to the village of Dresden. He traversed Milo Street, both north and south of where the bridge had been, and made an inspection of,

and a visit to, the approaches thereto and thereof, and the various roads, highways, and railroad crossings, to which reference was made by the witnesses during the trial. This decision is based upon such inspection, as well as upon the evidence taken upon the trial.

On April 28, 1943, the condition of the bridge became such that it was apparent it was dangerous for users of the highway. The County Superintendent of Highways thereupon, gave directions, caused barricades to be placed at each end of the bridge, and closed it for use.

Thereafter, no further steps appear to have been taken by the county superintendent until August 4, 1943, when there was served upon him a notice, under section 231 of the Highway Law, signed by the superintendent of highways of the town of Torrey, the members of the town board, and five other residents of the town of Torrey, which called upon the county superintendent, in accordance with the statute, to formally inspect and condemn the bridge. Up to that time the county superintendent had made no formal condemnation of the bridge. Upon a failure to comply with the terms of that demand, a proceeding was brought in Supreme Court to compel the County Superintendent of Highways to formally condemn the bridge. That proceeding was heard by Mr. Justice VAN VOORHIS, who held that the refusal of the County Superintendent of Highways " to execute a formal condemnation of the bridge must be held to be in a legal sense arbitrary ", and that his failure to condemn, after receiving the statutory notice hereinbefore-mentioned, constituted " an abuse of discretion ". (*Matter of Town of Torrey* v. *Havens,* Sup. Ct., Yates Co., Feb. 2, 1944, VAN VOORHIS, J.) The county superintendent was directed to condemn the bridge in accordance with the petition, which he did, pursuant to the order therein dated February 10, 1944. Since then, nothing has been done with reference thereto until the institution of this proceeding to require the County of Yates to build and reconstruct the bridge in a condition suitable for ordinary highway travel. The highway and the bridge were in constant use, and had been kept in condition for such use, right up until the time the bridge was barricaded on April 28, 1943.

No proceedings have been instituted by the county, or its officers, to formally bring about an abandonment of the highway, of which this bridge formed a part, until after this proceeding was begun, and was actually being heard. The hearing started on October 26, 1948, and on the second day of the trial, to wit: October 27, 1948, the respondents offered, and there was received

in evidence, a notice which had been prepared only the preceding day, and which had been served upon the town board of the town of Torrey, and the Board of Supervisors of Yates County the previous day, while the trial was in progress. This notice was signed by the County Superintendent of Highways, *over five years after* the bridge had been ordered closed by him, in which he certified, that the bridge in question " is little used, has become useless and not necessary for the public convenience and welfare ", and that he did " recommend abandonment of the same ".

It is interesting to note, for such inferences as may be logically drawn from the preparation and service of such a notice after a lapse of over five years, and during the actual trial of this proceeding, that it was so made by the same County Superintendent of Highways, whose " arbitrary " action in failing to comply with the provisions of law to condemn such bridge back in August of 1943, had been so termed, and " his failure to act " termed an " abuse of discretion ".

As previously pointed out, up to the time of actual trial, no abandonment of the highway had been made and no proceedings to that end had been instituted. The court's attention has not been called to any action taken by the County of Yates, or any further action, than as indicated, by the County Superintendent of Highways, to this very date.

After the commencement of this proceeding, and prior to the service of an answer by the respondents, a motion was made by these respondents, asking for the dismissal of the petition herein, on the ground that the petitioners had failed to allege that prior to the institution of this proceeding a demand had been made upon the respondents to restore the bridge. Such a demand was held to be unnecessary, the objection taken by the respondents was dismissed, and it was left to this court to determine, by the taking of evidence, whether its discretion should be exercised to compel the respondents to proceed with the reconstruction of the bridge, in accordance with the holdings in *Matter of Salisbury* v. *Rogers* (252 App. Div. 223), and *Matter of Schuyler* v. *Town of Angelica* (137 Misc. 190, affd. 232 App. Div. 718). (Decision of VAN VOORHIS, J., dated April 23, 1948.)

Such a hearing has now been had, and the court cannot escape the conclusion that the highway has not been abandoned; that it was in constant use up to the time of the barricading of the bridge; that there is need for the highway; and that the failure to reconstruct the bridge, and make the highway useable, creates an unnecessary and unjust hardship upon the residents of the

village of Dresden, the community surrounding it, and of these many desiring to use the facilities and business establishments located in the village, and its environs.

It is true that the estimate of the County Superintendent of Highways, unco-operative, if not antagonistic, to the project as he has been shown to be, contends that reconstruction of the bridge now would cost in the neighborhood of $104,000, although in 1944, as he admits, it would have cost $65,000 to $70,000 to rebuild. It may or may not be that such will prove to be the fact, or it may be that a bridge of a different type than as anticipated by the county superintendent may prove satisfactory and adequate, so that expenditure of such an amount will not be necessary.

In any event, it seems that the petitioners are entitled, by reason of all the facts herein disclosed and established, to have the bridge reconstructed as provided by subdivision 6 of section 231 of the Highway Law. If discretion is to be exercised by the court, as seems to be requisite under the authorities cited, it would seem that such should be exercised in favor of the petitioners, rather than in favor of the respondents. The reconstruction of the bridge will not cast an excessive burden on the county such as can be said to be out of proportion to the benefits to be realized. Rather it would seem that failure to reconstruct the bridge is an unjust burden upon petitioners, which, in the exercise of its discretion, the court should cause to be removed and ended.

Submit findings in accordance herewith.